**UNITED STATES of America,**

**v.**

**Christopher Richard MESSINO and Clement Messino.**

Nos. 93 CR 294–1, 93 CR 294–2.

United States District Court,
N.D. Illinois,
Eastern Division.

March 11, 1996.

John L. Sullivan, Magidson & Sullivan, Chicago, Illinois, for Estate of Biagio Messino, Maribeth Messino and Joseph Messino.

Joseph Storto, Storto, Kalal & Finn, Bensenville, Illinois, E.E. Edwards, Edwards & Simmons, Nashville, Tennessee, for Ted Borowski.

Matthew M. Schneider, Asst. U.S. Atty., Chicago, Illinois, for United States.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

ALESIA, District Judge.

On February 12, 1996, the court held an evidentiary hearing on the third-party claim of the estate of Biagio Messino to property located at 17027 Forest Avenue, Oak Forest, Illinois, a 1987 Crew Cab pickup truck, and a 1987 Wellcraft Scarab speedboat, all of which were ordered forfeited in connection with the above-captioned criminal case.

The court, based upon the credible evidence of record, makes the following Findings of Fact and Conclusions of Law.

### I. *Property Located at 17027 Forest Avenue, Oak Forest, Illinois*

#### A. FINDINGS OF FACT

*Facts*

█ 1. The property that was the subject of the forfeiture hearing is a 9.76 percent interest in property located at 17027 Forest Avenue, Oak Forest, Illinois ("Forest property").

2. The jury returned a special verdict of forfeiture at the end of the criminal trial of Clement and Christopher Richard Messino as to the Forest property.

3. The court entered a preliminary order of forfeiture against the Forest property on August 21, 1995.

4. In 1982, Clement Messino and his girlfriend, Robin Smith ("Smith") (now Robin George), purchased a residence at 15201 Lavergne, Oak Forest, Illinois ("Lavergne property"), on contract for $66,500.

5. Smith lived at the Lavergne property until 1989, and Clement Messino stayed with her frequently until 1987, when he went to prison.

6. In April or May 1989, Robin Smith quitclaimed her interest in the Lavergne property, which she held in the form of a trust, and transferred her interest to Biagio Messino.

7. Clement Messino gave Smith the money for her interest and signed Biagio Messino's name to the trust assignment document; Biagio Messino was not present.

8. Thereafter, Clement Messino lived with his girlfriend, Kathy Lewis ("Lewis"), at the Lavergne property.

9. Biagio Messino never lived at the Lavergne property.

10. Clement Messino explained to Lewis that he placed title to the Lavergne property in Biagio Messino's name to avoid problems with the Internal Revenue Service.

11. In 1991, Clement Messino decided to sell the Lavergne property.

12. On or about July 29, 1991, Clement Messino sold the Lavergne property to Dale and Betty Ann Darling for $124,000, with proceeds of $111,819.13.

13. Some time prior to June 22, 1991, Clement Messino and Lewis met with Joseph Koce ("Koce"), owner of the Forest property, at the Forest property to discuss purchasing the property. Clement Messino offered Koce $138,000 for the property, but Koce rejected the offer.

14. On June 22, 1991, Clement Messino successfully bid $130,000 for the Forest property at a real estate auction.

15. Sam Delisi ("Delisi") testified at the criminal trial of Clement and Christopher Richard Messino that he put up $12,700 at the real estate auction for the house that Biagio Messino was purchasing. He testified at the criminal trial that Biagio Messino had asked Delisi to loan Biagio Messino money, take it to the real estate auction, and, if Clement Messino's bid on behalf of Biagio Messino was accepted, to give the money to the auctioneer as a down payment on the Forest property. Delisi testified that he did as he was asked.

16. On or about July 26, 1991, Clement Messino's attorney, Michael Gubbins, ar-

ranged to have the Forest property put in a land trust for the benefit of Biagio Messino.

17. On or about July 29, 1991, the same day as the closing on the Lavergne property, the closing on the Forest property was held.

18. The balance of the monies necessary to close on the Forest property came from the proceeds of the Lavergne property.

19. Biagio Messino did not go to the Forest property to see Koce or attend the auction.

20. Biagio Messino did not attend the closing for the sale of the Lavergne residence or the purchase of the Forest property.

21. Clement Messino moved into the Forest property with Lewis after the closing on the Forest property on July 29, 1991.

22. After Clement Messino was incarcerated following his conviction in 92 CR 69, his wife Pamela Messino lived at the Forest property.

23. Biagio Messino lived in a house at 10758 South Whipple, Chicago, Illinois, for 56 years.

24. Biagio Messino never lived at the Forest property.

25. According to the record in the criminal trial, Delisi had obtained money orders for Christopher Richard Messino on several occasions. On one occasion, for example, Delisi purchased a money order totalling $9,000 made payable to Jerry Haas for construction of the "Shake, Rattle & Run" race car.

*Witnesses*

*Claimant's witness*

26. **Sam Delisi** testified at the criminal trial of Clement and Christopher Richard Messino.

*Government's witnesses*

27. **Robin Smith** testified at the criminal trial of Clement and Christopher Richard Messino.

28. **Kathy Lewis** testified at the criminal trial of Clement and Christopher Richard Messino.

29. **Dale Darling** testified at the criminal trial of Clement and Christopher Richard Messino.

30. **Joseph Koce** testified at the criminal trial of Clement and Christopher Richard Messino.

*Credibility Findings*

31. **Sam Delisi** did not testify at the February 12, 1996, hearing before this court, and this court was not the trier of fact at the criminal trial at which he testified. Thus, this court cannot make a credibility finding as to this witness. However, the court notes that the trier of fact at the criminal trial, the jury, returned a special verdict of forfeiture against the Forest property despite Delisi's testimony, which was to the effect that Biagio Messino, and not Clement Messino, owned the Forest property. Thus, the inference is that the jury found Sam Delisi's testimony not to be credible, or to be outweighed by other evidence.

32. **Robin Smith, Kathy Lewis, Dale Darling,** and **Joseph Koce** did not testify at the February 12, 1996, hearing before this court, and this court was not the trier of fact at the criminal trial at which they testified. Thus, this court cannot make a credibility finding as to these witnesses. However, the court notes that the trier of fact at the criminal trial, the jury, returned a special verdict of forfeiture against the Forest property based on the testimony of these witnesses. Thus, the inference is that the jury found these witnesses credible.

**B. CONCLUSIONS OF LAW**

1. In addition to the testimony and evidence presented at the February 12, 1996, hearing before the court, the court shall consider the relevant portions of the record of the criminal case that resulted in the order of forfeiture against the Forest property. 21 U.S.C. § 853(n)(5).

2. In order for claimant estate of Biagio Messino to succeed on its claim for the Forest property, it must establish by a preponderance of the evidence that it has a legal right, title, or interest in the Forest property, and that its right, title, or interest renders the order of forfeiture for the Forest

property invalid in whole or in part, because the right, title, or interest was vested in Biagio Messino rather than in Clement Messino or was superior to any right, title, or interest of Clement Messino at the time of the commission of the acts that gave rise to the forfeiture of the Forest property. *See* 21 U.S.C. § 853(n)(6)(A).

3. Claimant estate of Biagio Messino has failed to meet the foregoing burden, and therefore has not established that it has a right to an interest in the Forest property.

### C. DECISION

Claimant estate of Biagio Messino's claim to a 9.76 percent interest in the property located at 17027 Forest Avenue, Oak Forest, Illinois, is denied.

### II. *1987 Crew Cab Pickup Truck— VIN 1GCHR33NXH5164969*

### A. FINDINGS OF FACT

*Facts*

1. The property that was the subject of the forfeiture hearing is a 25.37 percent interest in a 1987 crew cab pickup truck ("truck").

2. The jury returned a special verdict of forfeiture at the end of the criminal trial of Clement and Christopher Richard Messino as to the truck.

3. The court entered a preliminary order of forfeiture against the truck on August 17, 1995.

4. In 1987, Carole Jones sold vehicles for James Chevrolet in Bolingbrook, Illinois.

5. In May 1987, Jones sold a 1987 one-ton crew cab pickup truck to a person who called himself Biagio Messino. In her testimony in the criminal trial of Clement and Christopher Richard Messino, Jones described Biagio Messino as a man in his late 40s or early 50s with black hair, approximately five feet ten or eleven inches tall. This description fits Christopher Richard Messino.

6. Jones accepted $5,000 down for the truck. The balance was financed through First Naper Bank of Bolingbrook. The name of the person obligated on the note was Biagio Messino of 10758 Whipple Street, Chicago, Illinois.

7. George Thorpe was with Christopher Richard Messino when he bought the truck and financed the purchase in his father's, Biagio Messino's, name.

8. Christopher Richard Messino told Tom Hauck and others that the truck was his.

9. Christopher Richard Messino often was seen driving the truck.

10. While Hauck worked for Christopher Richard Messino at Auto Abbey, Christopher Richard Messino asked Hauck to send money orders in Biagio Messino's name to the bank on a monthly basis to pay for the truck.

11. Hauck was aware that Biagio Messino was listed as the owner of the truck.

12. Christopher Richard Messino's former spouse, Kim Forbes, made payments on the truck in Biagio Messino's name. She saw Christopher Richard Messino drive the truck, but never saw Biagio Messino drive the truck.

13. Michael Homerding testified at the criminal trial that Christopher Richard Messino used the crew cab pickup truck to tow the Wellcraft boat away from Spinaker's Marina in Miami, Florida.

14. The retail installment contract for the purchase of the truck with Naper Bank provided for 36 payments of $462.31 commencing June 1987.

15. Biagio Messino's daughter, Leticia Salamone, found 12 checks made out to Naper Bank among her father's belongings at 10758 South Whipple, Chicago, Illinois. Each check was in the amount of $462.31, for the months of December 1987; January and February 1988; May 1988; June 1988 (two checks); August 1988; October 1988 through January 1989; and January 1990.

16. Leticia Salamone testified at the February 12, 1996, hearing before this court that she saw her father drive the truck frequently.

17. Maribeth Messino, Biagio Messino's granddaughter, testified at the February 12, 1996, hearing before this court that she saw her grandfather drive the truck frequently.

*Witnesses*

*Claimant's witnesses*

18. **Leticia Salamone,** executrix of Biagio Messino's estate and Biagio Messino's daughter, testified on behalf of the estate at the February 12, 1996, hearing before this court.

19. **Maribeth Messino,** Biagio Messino's granddaughter, testified at the February 12, 1996, hearing before this court.

*Government's witnesses*

20. **Carole Jones** testified at the criminal trial of Christopher Richard and Clement Messino.

21. **Tom Hauck** testified at the criminal trial of Christopher Richard and Clement Messino.

22. **Kim Forbes** testified at the criminal trial of Christopher Richard and Clement Messino.

23. **Michael Homerding** testified at the criminal trial of Christopher Richard and Clement Messino.

24. **George Thorpe** testified at the criminal trial of Christopher Richard and Clement Messino.

*Credibility Findings*

▆ 25. **Leticia Salamone** was a somewhat, but not completely, credible witness. The court does not doubt that Leticia Salamone found the checks among Biagio Messino's belongings, but finds that the other evidence indicates that it was not Biagio Messino who bought the truck and wrote the checks. Putting the truck and writing checks in Biagio Messino's name is consistent with how Christopher Richard Messino laundered money.

The court does not find credible Leticia Salamone's testimony that she saw her father drive the truck frequently because it is inconsistent with a substantial amount of other evidence presented at the criminal trial. In addition, the court does not find Leticia to be an unbiased witness.

26. **Maribeth Messino's** testimony was not very credible. Her testimony that she saw her grandfather drive the truck frequently is inconsistent with a substantial amount of other evidence presented at the criminal trial.

The evidence seems relatively clear that it was Christopher Richard Messino who bought the truck in Biagio Messino's name and instructed others to make payments on it in Biagio Messino's name.

27. **Carole Jones, Tom Hauck, Kim Forbes, Michael Homerding,** and **George Thorpe** did not testify at the February 12, 1996, hearing before this court, and this court was not the trier of fact at the criminal trial at which they testified. Thus, this court cannot make a credibility finding as to these witnesses. However, the court notes that the trier of fact at the criminal trial, the jury, returned a special verdict of forfeiture against the truck based on the testimony of these witnesses. Thus, the inference is that the jury found these witnesses credible.

**B. CONCLUSIONS OF LAW**

1. In addition to the testimony and evidence presented at the February 12, 1996, hearing before the court, the court shall consider the relevant portions of the record of the criminal case that resulted in the order of forfeiture against the truck. 21 U.S.C. § 853(n)(5).

2. In order for claimant estate of Biagio Messino to succeed on its claim for the truck, it must establish by a preponderance of the evidence that it has a legal right, title, or interest in the truck, and that its right, title, or interest renders the order of forfeiture for the truck invalid in whole or in part, because the right, title, or interest was vested in Biagio Messino rather than in Christopher Richard Messino or was superior to any right, title, or interest of Christopher Richard Messino at the time of the commission of the acts that gave rise to the forfeiture of the truck. *See* 21 U.S.C. § 853(n)(6)(A).

3. Claimant estate of Biagio Messino has failed to meet the foregoing burden, and therefore has not established that it has a right to a 25.37 percent interest in the 1987 crew cab pickup truck.

## C. *DECISION*

Claimant estate of Biagio Messino's claim to the 1987 crew cab pickup truck is denied.

### III. *1987 Wellcraft Scarab Speedboat*

#### A. *FINDINGS OF FACT*

*Facts*

■ 1. The property that was the subject of the forfeiture hearing is a 1987 Wellcraft Scarab speedboat ("boat").

2. The jury returned a special verdict of forfeiture at the end of the criminal trial of Clement and Christopher Richard Messino as to the boat.

3. The court entered a preliminary order of forfeiture against the boat on August 17, 1995.

4. Christopher Richard Messino, son of Biagio Messino, visited Sidney Boyansky's Spinaker's Marina, in Miami, Florida, three or four times in 1990 to examine Boyansky's 34-foot Wellcraft Scarab speedboat.

5. On December 11, 1990, Christopher Richard Messino paid Boyansky $35,000 in cash for the boat, and had Boyansky make out the receipt in the name of Biagio Messino of 10758 South Whipple Street, Chicago, Illinois.

6. On December 12, 1990, Martin County deputy sheriff Arango observed Christopher Richard Messino putting the boat into the water near Christopher Richard Messino's residence in Palm City, Florida.

7. Christopher Richard Messino told Arango that his name was Biagio Messino, that the boat belonged to him, and that he had purchased the boat at Spinaker's Marina in Miami.

8. On September 13, 1991, law enforcement officers seized the boat from Christopher Richard Messino's residence in Palm City, Florida.

*Witnesses*

*Claimant's witnesses*

*None*

*Government's witnesses*

9. *Sydney Boyansky* testified at the criminal trial of Christopher Richard and Clement Messino.

10. *Richard Arango* testified at the criminal trial of Christopher Richard and Clement Messino.

*Credibility findings*

11. *Sydney Boyansky* and *Richard Arango* did not testify at the February 12, 1996, hearing before this court, and this court was not the trier of fact at the criminal trial at which they testified. Thus, this court cannot make a credibility finding as to these witnesses. However, the court notes that the trier of fact at the criminal trial, the jury, returned a special verdict of forfeiture against the boat based on the testimony of these witnesses. Thus, the inference is that the jury found these witnesses credible.

#### B. *CONCLUSIONS OF LAW*

1. In addition to the testimony and evidence presented at the February 12, 1996, hearing before the court, the court shall consider the relevant portions of the record of the criminal case that resulted in the order of forfeiture against the boat. 21 U.S.C. § 853(n)(5).

2. In order for claimant estate of Biagio Messino to succeed on its claim for the boat, it must establish by a preponderance of the evidence that it has a legal right, title, or interest in the boat, and that its right, title, or interest renders the order of forfeiture for the boat invalid in whole or in part, because the right, title, or interest was vested in Biagio Messino rather than in Christopher Richard Messino or was superior to any right, title, or interest of Christopher Richard Messino at the time of the commission of the acts that gave rise to the forfeiture of the boat. *See* 21 U.S.C. § 853(n)(6)(A).

3. Claimant estate of Biagio Messino has failed to meet the foregoing burden, and therefore has not established that it has a right to the 1987 Wellcraft Scarab speedboat.

#### C. *DECISION*

Claimant estate of Biagio Messino's claim to the 1987 Wellcraft Scarab speedboat is denied.